In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3413

CK Witco Corporation,

Plaintiff/Counterclaim
Defendant-Appellee,

v.

Paper Allied Industrial, Chemical
& Energy Workers International Union,
Local 60-807, AFL-CIO,

Defendant/Counterclaimant/
Third-Party Plaintiff-Appellant,

v.

Goldschmidt Chemical Corporation,

Third-Party Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois, Peoria Division.
No. 00-1022--Michael M. Mihm, Judge.

Argued April 18, 2001--Decided November 9, 2001


   Before Harlington Wood, Jr., Diane P. Wood,
and Williams, Circuit Judges.

   Williams, Circuit Judge.  In this case,
we are called upon to determine the
arbitrability of several labor disputes
governed by collective bargaining
agreements. The case is unique, however,
because the disputes all involve
twoseparate employers, two separate union
bargaining units, and two separate,
although identical, collective bargaining
agreements. But contrary to the arguments
of the employers, and the decision of the
district court, this novelty does not
affect the conclusion we must reach that
under the collective bargaining
agreements the disputes are subject to
arbitration. Therefore, we reverse.

I.  BACKGROUND

A.  The Facts

The seeds of this dispute were planted early, back when Witco singly owned and operated a chemical manufacturing plant in Mapleton, Illinois. The plant consisted of two separate facilities: the Main Plant and the Metal Organics Plant ("MOP"), which together were referred to as the Mapleton Plant. On August 31, 1999, Witco sold the Main Plant to Goldschmidt. In the sale, Goldschmidt hired the employees who were working at the Main Plant, some 245 employees. Witco retained the MOP and the 20 employees working there.

While the physical division of the plant and the employees appears to have been rather effortless, contractual rights between the employees and the employers were not so easily divisible. The employees were represented by Paper Allied Industrial, Chemical & Energy Workers International Union, Local 60-807, AFL-CIO ("the Union")./1 More importantly, several years before the sale, Witco and the Union entered into a collective bargaining agreement ("CBA"), which covered the employees at both the Main Plant and the MOP. The CBA addressed a wide variety of topics, including employee seniority and transfer rightsbetween the two facilities.

In the CBA, Witco and the Union agreed that the "contract shall be binding upon the parties hereto, their successors, transferees and assignees" and that "[i]n the event [Witco] sells or transfers the Mapleton Plant, this contract shall remain in full force and effect and be binding upon the purchaser or transferee." As a consequence of this full force and effect provision it seems, in the Purchase Agreement between Witco and Goldschmidt for the sale of the Main Plant, Goldschmidt agreed, without exception, to "assume the agreements listed on Schedule 7.8," which included the CBA.

Both Witco and Goldschmidt individually informed the employees that Goldschmidt had agreed to assume the CBA. Witco stated in its letter that Goldschmidt had agreed to assume the CBA, and that all terms and conditions of the CBA would remain in full force and effect after the sale. However, Goldschmidt stated in its letter that it had agreed to assume the CBA, with the exception of the MOP

employees.

After the partition of the Mapleton Plant, Witco and Goldschmidt each prepared separate seniority lists. In addition, neither allowed transfers from the other's facility, which arguably would have been allowed prior to the sale under the CBA. The Union, therefore, objected and requested that the employers prepare a unified list and allow the transfers. But the disputes could not be resolved amicably, because the employers refused to change practices and denied any violation of the CBA./2 The Union filed grievances with the Federal Mediation and Conciliation Service ("FMCS"), requesting that the FMCS designate an arbitrator to resolve the contested issues. Witco and Goldschmidt refused to arbitrate.

Instead, Witco filed a unit clarification petition with the Regional Office of the National Labor Relations Board ("NLRB"). Goldschmidt intervened. After an investigation and its consideration of the evidence, the NLRB found that the MOP workers constituted a separate bargaining unit from the Main Plant workers and granted Witco's unit clarification petition.

With this decision in hand, Witco then filed an unfair labor grievance against the Union in the Regional Office of the NLRB, alleging that its pursuit of arbitration was an unfair labor practice. An Associate General Counsel in the NLRB Division of Advice issued an advice memorandum, solicited by the Regional Director for the NLRB, in which he found that the Union's request for arbitration was not an unlawful attempt to merge the two bargaining units but an enforcement of contractual rights that "arguably could survive" the separation. Witco withdrew its grievance.

B.  District Court Proceeding

Still resisting arbitration, Witco filed suit in the United States District Court for the Central District of Illinois, seeking a permanent injunction of the Union's arbitration proceedings. The Union counterclaimed against Witco and filed a third-party complaint against Goldschmidt, seeking to compel both parties to arbitrate in accordance with

the CBA and an award of damages for breach of the CBA for their refusal to arbitrate. All parties moved for summary judgment.

The district court granted summary judgment in favor of Witco and Goldschmidt (and denied it in favor of the Union), finding that although the employers had agreed to submit to arbitration seniority and transfer issues with respect to their own employees, they had not agreed as to each other's employees. Furthermore, the district court found that arbitration would constitute an unlawful attempt to overturn or modify the NLRB's unit clarification decision. The Union now appeals.

## II.  ANALYSIS

### A.  Duty to Arbitrate

It is fundamental that the right or duty to arbitrate must arise out of a contract, and without that agreement a party cannot be required to submit a dispute to arbitration. United Steelworkers of Am. v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582 (1960); R.J. Distrib. Co. v. Teamsters, Chauffeurs & Helpers Local Union No. 627, 771 F.2d 211, 214 (7th Cir. 1985). At the same time, when a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 650 (1986). We review the district court's grant and denial of summary judgment on the issue of arbitration de novo. Local 75, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Schreiber Foods, Inc., 213 F.3d 376, 379 (7th Cir. 2000).

The CBA arbitration provisions provide that a grievance is "any dispute submitted by an employee or Union representative involving an alleged violation of the express provision of this Agreement . . . and involving the interpretation or application of the provisions of the Agreement." If the grievance is not resolved satisfactorily,

the Union is entitled to "appeal to arbitration," and "[t]he arbitrator shall have authority to make decisions only on grievances relating to the interpretation or performance of the express terms of this Agreement." We turn now to consider whether the disputes fit within this arbitration clause.

In its purest and most simple form, the dispute the Union seeks to arbitrate is whether Witco and Goldschmidt have complied with the "full force and effect" provision of the CBA. Indeed, the Union can only make a plausible demand for unified seniority and transfer rights between both facilities because such rights existed before the sale, and, as the Union argues, must be maintained after the sale via the full force and effect provision. This dispute, of course, fits within the scope of the arbitration clause of the CBA. Therefore, it is undeniable that Witco and the Union, insofar as it represents current employees of Witco, must arbitrate that dispute under the CBA arbitration clause. The same is true for Goldschmidt and the Union, to the extent that it represents current Goldschmidt employees. Neither Witco nor Goldschmidt really contest this determination as to its employees; rather they implicitly concede this point. The district court accepted this position as well.

However, Witco and Goldschmidt do argue that the arbitration provisions create no duty to arbitrate with non-employees, i.e., employees from the other's plant. We are willing for the moment to accept this argument as true, if only to explain why it makes no difference to our decision. As we have said, the employees in each facility possess a contractual entitlement against their respective current employer to maintenance of the "full force and effect" of the CBA in the event of a sale./3 The scope of that entitlement and the attendant duty on the employers is a matter for the arbitrator to resolve, not for us. We conclude only that all the present disputes arise from that entitlement, and therefore that entitlement, along with the disputes, must be arbitrated as they relate to each respective current employer. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987) (citing Mitsubishi Motors Corp. v. Soler

Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.13 (1985)) ("If the allegations underlying the claims 'touch matters' covered by the parties' [contractual] agreements, then those claims must be arbitrated, whatever the legal labels attached to them.").

The seniority rights dispute that the Union argues violates the CBA is an example. Goldschmidt's failure to include Witco employees in its seniority list may violate Goldschmidt employees' entitlement under the CBA to the "full force and effect" of the agreement. Goldschmidt employees who, under Goldschmidt's current practices, would be at the bottom of Goldschmidt's seniority list, except for less senior employees at Witco, have less protection from lay-offs or "bump-backs" than they would have received before the sale. Goldschmidt employees, then, have a plausible and arbitrable claim that they have been denied the "full force and effect" of the CBA by Goldschmidt and its current practices. As another example, Witco's failure to recognize Goldschmidt employees' transfer rights may also constitute a denial by Goldschmidt of its employees' entitlement to maintenance of the "full force and effect" of the CBA in the event of sale, another issue that Goldschmidt and its employees must arbitrate.

For both disputes in these examples, the same reasoning applies equally to Witco employees against Witco. But as to Witco, the Union need not proceed in such an indirect manner. Current Goldschmidt employees were once Witco employees and were covered by the CBA. Witco's failure to maintain the "full force and effect" of the CBA in the sale to Goldschmidt is an arbitrable violation for former Witco employees, regardless of the fact that they are currently employed by Goldschmidt. The claims relate to violations that occurred while they were Witco employees. The mere fact that they were discharged and hired by a new employer (Goldschmidt) did not vitiate their rights or their ability, or that of the Union on their behalf, to enforce them through arbitration under the CBA. And, we see no reason that it should have, under the arbitration clause.

So what remains of Witco's and

Goldschmidt's argument? Practically nothing. Goldschmidt is correct in theory that if the Union wants to enforce the CBA against it on behalf of current Witco employees who were never associated with Goldschmidt, then the Union must haul Goldschmidt into court, not into arbitration. We can find no contractual relationship between Witco employees and Goldschmidt upon which to base a duty to arbitrate, a conclusion which would necessarily foreclose any court action. But practically speaking, any claim current Witco employees want to assert directly against Goldschmidt, they may assert in arbitration indirectly against Witco, through the "full force and effect" provision of the CBA.

## B. NLRB Decision

Witco and Goldschmidt also assert, however, that this conclusion cannot be reconciled with the NLRB's decision that clarified the labor bargaining units. They argue that the NLRB decision makes it impossible to maintain crossrights of employees who are part of separate bargaining units, and allowing arbitration would implicitly overrule the NLRB decision. This is a red herring, and we reject it.

The NLRB decision merely clarified the bargaining units, and did not (nor does it now) in any way touch the merits of the Union's contract claims. The NLRB stated as much in its decision ("These contract interpretation disputes are beyond the scope of this UC proceeding . . . ."), and so did the Associate General Counsel, in the NLRB Division of Advice, when Witco tried to advance an unfair labor grievance ("[The Union is] merely seeking to enforce contractual transfer rights which arguably could survive the split of the bargaining unit.").

But more to the point, we have not held that the Union may arbitrate any non-employee cross-rights, only those rights to which the employees are entitled from their current employer or which existed from their former employer.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is Reversed and the case is Remanded. Witco's motion for

sanctions against the Union is Denied.

FOOTNOTES

/1 The Union is the successor of the Oil, Chemical
and Atomic Workers International Union, AFL-CIO,
Local 7-807, the Union actually party to the
original collective bargaining agreement.

/2 Although we only refer to one "CBA," we recognize
that the employers each have separate collective
bargaining agreements. The written terms of the
agreements are identical, however, and therefore
when addressing the terms, we only refer to one
CBA.

/3 To the extent Goldschmidt limited this duty in
its letter to the employees, it only did so as to
whom that duty is owed, i.e., its employees, and
not the scope of that duty.