25 F.3d 223
 CARGILL RICE, INCORPORATED, Plaintiff-Appellant,
v.
EMPRESA NICARAGUENSE DEALIMENTOS BASICOS,
Defendant-Appellee. (Two Cases)
EMPRESA NICARAGUENSE DEALIMENTOS BASICOS, Plaintiff-Appellee,
v.
CARGILL RICE, INCORPORATED, Defendant-Appellant.
 Nos. 92-1708, 93-1438, 93-1452.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 1, 1993.
Decided May 27, 1994.
 
 ARGUED: Patrick Vincent Martin, Hill, Rivkins, Loesberg, O'Brien, Mulroy & Hayden, New York City, for appellant. Paul Stuart Reichler, Reichler, Milton & Medel, Washington, DC, for appellee. ON BRIEF: Robert Charles Seldon, Krooth & Altman, Sterling, VA, for appellant. Gregory Lynn Murphy, Murphy, McGettigan & West, Alexandria, VA, for appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 Reversed and remanded by published opinion. Judge Donald RUSSELL wrote the majority opinion, in which Judge WIDENER joined. Judge K.K. HALL wrote a dissenting opinion.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Cargill Rice, Inc. (Cargill) appeals the district court's orders dismissing its motion to compel arbitration of its dispute with Empresa Nicaraguense de Alimentos Basicos (ENABAS) before arbitrators chosen by mutual agreement of the parties, and confirming an arbitration award in favor of ENABAS granted by arbitrators who were not so chosen. We agree with Cargill that arbitration of the parties' dispute could properly proceed only before mutually-chosen arbitrators; as a result, we reverse both of the district court's orders.
 
 I.
 
 2
 Cargill and ENABAS, an agency of the Nicaraguan government, entered into a commercial contract under which Cargill was to deliver rice to ENABAS in Nicaragua. A dispute developed over the condition of the rice when it arrived in Nicaragua; the parties agreed that this dispute should be resolved under the arbitration clause of their contract. That clause, translated from Spanish, stated in relevant part: "Any dispute ... which may arise in the ... performance of this Contract shall be resolved by arbitral award (decision of arbitrators) chosen by mutual agreement. This can be in Nicaragua or the Rice Millers' Association [RMA] of the United States."[1]
 
 
 3
 ENABAS made a demand to arbitrate the parties' dispute with the RMA. Under the RMA arbitration rules, the RMA arbitration committee appoints the arbitrators. RMA Arbitration Rule 8(a). Cargill wrote to the arbitration committee, calling to its attention that the arbitration clause in the parties' contract required that the arbitrators for the parties' dispute be chosen by mutual agreement and contending that arbitrators not so chosen would lack jurisdiction to arbitrate the dispute. The arbitration committee rejected this contention and appointed itself as the three-member arbitration panel for the dispute.
 
 
 4
 Cargill responded by filing an action in the Eastern District of Virginia to compel arbitration of the parties' dispute before arbitrators chosen by mutual agreement of the parties, but the district court dismissed it. The arbitration panel appointed by the RMA arbitration committee proceeded to arbitrate the dispute and awarded ENABAS $1,338,796.44, which was subsequently confirmed by the district court.
 
 
 5
 Cargill takes this appeal from the district court's confirmation of ENABAS' award and the district court's earlier dismissal of its action to compel arbitration before arbitrators mutually-chosen by the parties. Cargill presses the point it has made throughout the case: that the arbitration clause in the parties' contract expressly requires arbitrators chosen by mutual agreement of the parties.
 
 II.
 
 6
 Because "arbitration is a matter of contract," AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), parties may determine by contract the method under which arbitrators for their disputes will be appointed, Universal Reinsurance Corp. v. Allstate Ins. Co., 16 F.3d 125, 128 (7th Cir.1994); Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831 (11th Cir.1991); Avis Rent A Car System, Inc. v. Garage Employees Union, 791 F.2d 22, 24 (2d Cir.1986); ATSA of California, Inc. v. Continental Ins. Co., 754 F.2d 1394, 1395-96 (9th Cir.1985) (amending original opinion reported at 702 F.2d 172, 175-76 (9th Cir.1983)). In fact, the Federal Arbitration Act (FAA), 9 U.S.C. Secs. 1-16, expressly states in section 5 that if the parties have provided in their contract "a method of naming or appointing an arbitrator or arbitrators ..., such method shall be followed." 9 U.S.C. Sec. 5.
 
 
 7
 The arbitration clause in Cargill and ENABAS' contract states: "Any dispute ... which may arise in the ... performance of this Contract shall be resolved by arbitral award (decision of arbitrators) chosen by mutual agreement. This can be in Nicaragua or the Rice Millers' Association of the United States." This clause indicates that the arbitrators are to be chosen by mutual agreement--under the clause's language, the only subjects, other than the arbitrators, that could be "chosen by mutual agreement" are the award or the decision and, in an arbitration, the award and the decision cannot be "chosen by mutual agreement" because they are determined by the arbitrators. This "mutual agreement" must be mutual agreement of the parties, for the arbitration clause suggests no one else who could mutually agree. The arbitration clause, therefore, expressly sets forth the parties' method for appointing arbitrators--appointment by mutual agreement of the parties--and section 5 of the FAA requires us to ensure their method be followed.[2]
 
 
 8
 ENABAS makes two attempts to evade this interpretation of the arbitration clause. First, it attempts to persuade us that the clause's language "chosen by mutual agreement" refers to the arbitral forum, not the arbitrators. We reject this interpretation because nothing in the sentence that speaks of "chosen by mutual agreement" makes any reference to arbitral forums.
 
 
 9
 Second, ENABAS contends that, in any event, we must defer to the determination by the RMA arbitration committee that the arbitration clause does not require arbitrators chosen by mutual agreement of the parties. We find this position untenable. While we do, of course, defer in some circumstances to contractual interpretations of arbitrators, we are aware neither of any authority nor any reason to defer to the contractual interpretation of the arbitration committee of an arbitral forum. That the members of this arbitration committee later appointed themselves as the arbitrators does not alter our determination not to accord their interpretation deference.
 
 
 10
 Furthermore, even if the arbitrators here could somehow have interpreted the contract to determine how they should be selected (which appears impossible because the determination of how they should be selected obviously had to precede their selection), their interpretation would not be entitled to deference because it would have involved a determination of their own jurisdiction. See AT & T Technologies, 475 U.S. at 651, 106 S.Ct. at 1419 (stating that an arbitrator should not be given "the power to determine his own jurisdiction") (quotations omitted); International Ass'n of Machinists v. General Elec. Co., 865 F.2d 902, 904 (7th Cir.1989) (Posner, J.) ("The arbitrator is not the judge of his own authority...."); Bear Stearns & Co. v. N.H. Karol & Assocs., Ltd., 728 F.Supp. 499, 501-02 (N.D.Ill.1989).
 
 
 11
 Having interpreted the arbitration clause to require that the arbitrators be chosen by mutual agreement of the parties, we turn to the district court's two orders in these consolidated cases. In one order, it confirmed an award granted to ENABAS by arbitrators appointed by the RMA arbitration committee.[3] Arbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated, Szuts, 931 F.2d at 832; Avis, 791 F.2d at 26; Bear Stearns, 728 F.Supp. at 501 ("[A]rbitrator[s] who [are] improperly elected ha[ve] no power to resolve a dispute between the parties...."); this confirmation of an award granted by arbitrators not chosen by mutual agreement of the parties is, therefore, reversed and the arbitration award vacated.
 
 
 12
 The district court's other order dismissed Cargill's action under section 4 of the FAA[4] to compel arbitration before arbitrators chosen by mutual agreement of the parties.[5] Because Cargill was entitled to an arbitration before such arbitrators, this order is also reversed and Cargill's action is remanded for the district court to compel an arbitration before such arbitrators. The arbitration clause does not set forth how this choice of arbitrators by the parties should be conducted; the district court shall, therefore, require that it be conducted under the standard method, where both parties choose an arbitrator and these arbitrators select a third arbitrator. If these arbitrators cannot agree on this selection, the district court, under section 5 of the FAA, shall appoint the third arbitrator. 9 U.S.C. Sec. 5 ("[I]f for any ... reason there shall be a lapse in the naming of an arbitrator ..., then ... the court shall designate and appoint an arbitrator.").[6] Finally, the district court shall conduct any fact-finding necessary to determine where the arbitration should proceed.
 
 III.
 
 13
 For the reasons stated, the district court's orders are reversed and Cargill's action to compel arbitration before arbitrators chosen by mutual agreement of the parties is remanded with the instructions set forth above.
 
 REVERSED AND REMANDED
 K.K. HALL, Circuit Judge, dissenting:
 
 14
 In my view, the majority has rejected the most reasonable construction of the parties' contract and, in doing so, has instructed the district court to compel a new arbitration on terms that cannot be detected on even the closest reading of the contract. I believe that the arbitration was conducted in compliance with the parties' contract, and there were no defects in the arbitration serious enough to disturb the award. Consequently, I would affirm the judgment of the district court.
 
 I.
 
 15
 The parties agreed to arbitrate all disputes, under the following clause:
 
 DECIMO QUINTO:
 
 16
 Cualquier desaveniencia, mal entendido, querella o litis que se pudiese prestar en la interpretacion y/o ejecucion del presente CONTRATO, se resolvera mediante el laudo (Fallo de Arbitradores) nombrados de comun acuerdo. Esto puede ser en Nicaragua o la Asociacion de Molineros de Arroz en los Estados Unidos.
 
 
 17
 In English, this clause means, according to Cargill:
 
 FIFTEENTH:
 
 18
 Any dispute, misunderstanding, complaint or legal claim which may arise in the interpretation and/or performance of this Contract shall be resolved by means of the judgment of arbitrators appointed by mutual agreement. This could be in Nicaragua or the Rice Millers' Association in the United States.
 
 
 19
 ENABAS' translation differs in a few respects. The differences are underlined:
 
 FIFTEENTH:
 
 20
 Any dispute, misunderstanding, complaint or legal claim which may arise in the interpretation and/or performance of this Contract shall be resolved by arbitral award (decision of arbitrators) chosen by mutual agreement. This can be in Nicaragua or the Rice Millers' Association of the United States.[1]
 
 
 21
 As the parties attempted to resolve the dispute without arbitration, Cargill expressed its preference to arbitrate, if necessary, before the Rice Millers' Association (RMA). The RMA has a standing arbitration committee and a panel of arbitrators from whom the committee appoints three to hear any one case. Later, however, when ENABAS submitted the dispute to the RMA, Cargill balked at letting the committee select the individual arbitrators. It filed suit in district court under the Federal Arbitration Act to compel arbitration by a panel of three arbitrators, consisting of one each appointed by the parties and a third appointed by the first two. Meanwhile, the RMA found that the contract contained a "mutual agreement" that the RMA was an acceptable arbitral forum and that the parties intended that any arbitration before the RMA would follow the RMA's rules.
 
 
 22
 The district court ruled that the contract could reasonably be interpreted to deem the RMA an acceptable forum and to impliedly incorporate the RMA's rules and procedures. The court also noted that the RMA was already beginning the arbitral process, and there was little practical sense in ordering some other arbitration. Accordingly, it denied Cargill's request. Cargill appealed.
 
 
 23
 Next, the arbitration proceeded. The arbitrators found for ENABAS, and the decision was reduced to writing and distributed to the parties sometime shortly before November 24, 1992. The arbitrators awarded $1,338,796.44, plus 18% interest from May 1, 1992, until payment.
 
 
 24
 On February 16, 1993, Cargill moved to vacate the award in district court, and ENABAS counterclaimed for enforcement. The district court enforced the award, and Cargill appealed a second time.
 
 II.
 
 25
 Arbitration is a creation of contract, and no one can be compelled to submit to an arbitration to which it has not agreed. Cargill argues that it did not agree to arbitrate before RMA-appointed arbitrators, and the district court should have granted its motion to compel the parties to appoint arbitrators. ENABAS argues that the reference to the RMA in the final sentence of the clause amounts to a "mutual agreement" to the arbitrators who routinely conduct RMA arbitrations.
 
 
 26
 I agree with ENABAS. The RMA is not a place. It is, among other things, a standing arbitral body with complete rules and procedures to handle disputes submitted to it. Under either party's interpretation, the arbitration clause establishes at the very least that ENABAS and Cargill agree that the RMA is an acceptable forum. Generally, the agreement to arbitrate in a particular forum incorporates the rules and procedures of the forum. Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974). This general rule can sometimes be overridden by the express terms of the parties' contract,[2] and Cargill maintains that the contract requires the parties to agree upon the individual human beings making up the RMA panel.
 
 
 27
 This interpretation of the contract is certainly not the most reasonable. It necessarily implies that the RMA will (indeed must) lend its imprimatur to an arbitration conducted under its roof by utter strangers, or even by persons of whom it disapproves. Using a collective name to refer to a group of persons--be it the Cleveland Symphony, the Chicago Bears, or the Rice Millers' Association--is nonetheless a specific reference to those persons. If I buy a ticket to the game or the symphony, I expect to see a specific defensive backfield or horn section. Under the majority's reasoning, I should expect no more than some human being dressed in a Bears uniform or occupying a certain seat in the concert hall.
 
 
 28
 Finally, the district court's decision should be affirmed for practical reasons. First, the method of appointing arbitrators suggested by Cargill and adopted by the majority--each party chooses one, who then choose a third--is most definitely not prescribed anywhere in the contract. Ironically, under this method, not a single one of the arbitrators will have been chosen by "mutual agreement." The majority's explanation for imposing this "standard method" on the parties is telling: "The arbitration clause does not set forth how this choice of arbitrators by the parties should be conducted." Supra at 226. Indeed. I wonder, then, why the method prescribed by an identified arbitral body agreed to by the parties--the RMA--should not control over this court's perception of what ought to be a "standard" term in an international rice contract.
 
 
 29
 Second, where parties cannot agree on arbitrators, the Arbitration Act empowers the district court to appoint them. 9 U.S.C. Sec. 5. Who would or should the district court appoint in such a situation? The court may have no choice: Sec. 4 of the Arbitration Act limits the court to ordering arbitration in the district in which it sits, and, if puede means "can," ENABAS has a very strong argument that it cannot be compelled to submit to arbitration in the United States except before the RMA.[3] Even if other Fourth Circuit fora are available, there is probably no better qualified arbitral body than the RMA. I know whom I would appoint if I were in the district court's shoes.
 
 III.
 
 30
 I would affirm the denial of Cargill's motion to compel arbitration. Consequently, I would also reach the merits of Cargill's second appeal, and I would affirm the arbitral award. The arbitrators' findings are rational and draw their essence from the rice sale contract, and I am profoundly unimpressed with the procedural trivia Cargill has bemoaned in its attempt to paint the arbitration as unfair and oppressive.
 
 
 31
 I respectfully dissent.
 
 
 
 [1]
 ENABAS submits the translation set forth in the text; Cargill's translation differs only in that it reads the last sentence to state, "This could be in Nicaragua or the Rice Millers' Association of the United States," rather than, "This can be in Nicaragua or the Rice Millers' Association of the United States." This minor variance does not affect our analysis
 
 
 [2]
 We note that the RMA apparently will allow such an arbitration before arbitrators chosen by mutual agreement of the parties because while its rules state that the arbitrators are to be selected by the RMA arbitration committee, it is "flexible enough to allow the parties to request a method of appointment [of arbitrators]," according to ENABAS' counsel's statement at oral argument. Even if the RMA does not allow arbitration by arbitrators chosen by mutual agreement of the parties, however, the parties' arbitration still must proceed before arbitrators who are so chosen. The parties' provision in their contract for a method of appointing arbitrators must be honored over their provision of the RMA as a possible arbitral forum, for the FAA explicitly states that if the parties have provided in their contract "a method of naming or appointing an arbitrator or arbitrators ..., such method shall be followed," 9 U.S.C. Sec. 5 (emphasis added), and it does not explicitly require that the parties' selection of an arbitral forum be followed
 
 
 [3]
 ENABAS contends that Cargill's appeal of this arbitration was untimely, but this argument is without merit
 
 
 [4]
 Section 4 of the FAA, 9 U.S.C. Sec. 4, provides:
 A party aggrieved by the alleged failure ... of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.
 
 
 [5]
 ENABAS contends that the district court lacked personal jurisdiction over it in this action under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. Secs. 1330, 1602-1611, and that, in any event, it was not properly served under the FSIA. We find no merit in either contention
 
 
 [6]
 Both the dissenting opinion and ENABAS place great emphasis on the fact that the arbitration clause in the parties' contract does not specify the manner in which the parties are mutually to agree on arbitrators. Rather than enforcing the clause's provision that the parties appoint the arbitrators by mutual agreement and thereby requiring the court to determine the manner in which this designated method of appointment is to occur, they argue that, for practical reasons, we should simply allow the RMA arbitration committee to select the arbitrators--after all, the parties did specify the RMA as a possible arbitral forum
 In deciding arbitration cases, however, we are not governed simply by our own determination of what is favorable from the standpoint of practical reasons; first and foremost, we are governed by the FAA. The FAA provides absolutely no authority for disregarding the parties' choice that the arbitrators be appointed by their mutual agreement, and instead allowing the arbitrators to be appointed by the arbitration committee of an organization that appears in the parties' contract only because they designated it as a possible arbitral forum. In fact, to so allow the RMA arbitration committee to appoint the arbitrators would plainly violate section 5 of the FAA, which states: "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators ..., such method shall be followed." 9 U.S.C. Sec. 5. No amount of practical reasons could justify our reaching a result that so clearly violates the FAA.
 
 
 [1]
 The affidavits sponsoring these translations do not specify the identity or qualifications of the translators, or any explanation why the translator chose particular English words for the phrases in dispute. This defect in the record makes review difficult and frustrating. For example, the majority must resort to logic to find the antecedent of the English word "chosen," supra at 225, strongly suspecting that the word nombrados could, as a matter of elementary Spanish grammar, only refer to Arbitradores. Every schoolboy would translate puede as "can," but language and idiom are probably just a little too fluid for us to reject Cargill's proffer of "could" through judicial notice. This dispute is not relevant to analysis of the controlling issue today, though it could prove to be vitally important on remand. If puede means "can" and not "could"--and I have little doubt of it--the final sentence of the arbitration clause could be read to require the arbitration to proceed before the RMA or else in Nicaragua. As I discuss later in the text, this limitation could force the district court to simply order that the RMA arbitration repeat itself
 
 
 [2]
 See, e.g., Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830 (11th Cir.1991) (parties' contract stated that arbitration would be conducted before at least three arbitrators; even though American Arbitration Association was chosen as forum, AAA rule permitting arbitration to proceed before two arbitrators was overridden by parties' contract)
 
 
 [3]
 If Nicaragua were a signatory to the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards--it is not--a court in the United States could order the arbitration to proceed in Nicaragua. See 9 U.S.C. Sec. 206