**CHINA NATIONAL METAL PRODUCTS IMPORT/EXPORT COMPANY, Petitioner–Appellee,**

v.

**APEX DIGITAL, INC., Respondent–Appellant.**

**No. 03–55231.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 2004.

Filed Aug. 16, 2004.

Kenneth R. O'Rourke and Kevin M. Yopp, O'Melveny & Myers, L.L.P., Los Angeles, CA, for the respondent-appellant.

Jeffrey S. Gordon, Gina Guerra and J. Raymond Warner, Kaye Scholer, L.L.P., Los Angeles, CA, for the petitioner-appellee.

Before: HARRY PREGERSON, M. MARGARET McKEOWN, and JAY S. BYBEE, Circuit Judges.

BYBEE, Circuit Judge:

Apex Digital, Inc. ("Apex") appeals an order confirming an arbitral award obtained against it following an arbitration proceeding in Beijing. It claims that the parties' arbitration clause required China National Metal Products Import/Export Company ("China National") to bring any claim against Apex as a counterclaim in an arbitral proceeding previously initiated by Apex in Shanghai.

Apex argues that the arbitrating body, the China International Economic and Trade Arbitration Commission ("CIE-TAC"), disregarded the parties' arbitration clause by permitting separate arbitration of Apex's and China National's claims.

This irregularity, Apex asserts, provides it with a defense against confirmation of the Beijing arbitral award under Article V, § 1(d) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. V, § 1, *reprinted in* 9 U.S.C.A. § 201 note (West 2000) (hereinafter, "Convention"), and Apex claims that the district court erred by recognizing and enforcing the CIETAC Beijing arbitral award. We disagree and affirm the confirmation of the award.

## FACTS AND PROCEEDINGS BELOW

Apex, a U.S. importer of electronics equipment, and China National, a Chinese exporter, entered into a series of written sales agreements for DVD players (the "purchase orders"). The purchase orders specified the type and number of DVD players Apex ordered as well as the price for each type of DVD player. Paragraph 15 of each of the purchase orders provides:

> ARBITRATION: All dispute[s] arising from or in connection with this Contract shall be submitted to [CIETAC] for arbitration which shall be conducted by the Commission in Beijing or by its Shenzhen Sub–Commission in Shenzhen or by its Shanghai Sub–Commission in Shanghai at the Claimant's option in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral award is final and binding upon both parties.

China National shipped the DVD players that Apex agreed to purchase under the purchase orders.

Apex received numerous customer complaints concerning defects in the DVD players and experienced a higher than normal return rate with respect to some of the models. Nonetheless, Apex continued to order DVD players from China National and to ship them to its retailers.

In late 2000, Apex notified China National that it was in breach of the purchase orders because a large number of its DVD players were defective and because it had failed to pay intellectual property royalties for technology employed in the players. In early 2001, Apex began withholding payment on China National invoices for those DVD players imported between August and November 2000. China National demanded payment, but Apex refused to pay.

In February 2001, China National filed an attachment application in the U.S. District Court for the Central District of California to ensure that, were it to prevail against Apex in arbitration, it could recover. Although the magistrate judge granted the application, the District Court set aside that order, dismissed China National's claims, and referred the matter to arbitration before CIETAC. *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 155 F.Supp.2d 1174 (C.D.Cal. 2001).

On March 6, 2001, Apex commenced arbitration proceedings against China National by filing a Statement of Claims concerning nine of the purchase orders with the CIETAC Sub–Commission in Shanghai. On March 12, 2001, China National filed its own Statement of Claims concerning eight of the same purchase orders with CIETAC in Beijing. Apex objected to China National's arbitration application. It asserted that China National should be required to raise its claims as counterclaims in the Shanghai arbitration, where Apex had already filed for an arbitration concerning eight of the same purchase orders. CIETAC rejected Apex's objections and concluded that CIETAC could entertain the two arbitrations separately. It reasoned the arbitrations were not "entirely the same," noting that the Shanghai arbitration involved one additional contract

than the Beijing arbitration, China National had complied with all requirements for arbitration before CIETAC, and CIETAC lacked authority to force China National to raise its claims as counterclaims in the Shanghai arbitration.

In October 2001, the Beijing CIETAC panel conducted an arbitration hearing. In December 2001, the Shanghai CIETAC arbitration panel held its arbitration hearing. The Beijing arbitration panel ruled for China National in May 2002. It rejected Apex's continuing objection to its arbitral jurisdiction, noting that CIETAC had previously decided that issue. The panel then faulted Apex for unjustifiably withholding payment for *all* goods, both defective *and non-defective*. It awarded China National $10,718,921 plus interest. The Beijing panel arrived at this sum by deducting the potential dollar value of Apex's counterclaims for all nonconforming DVD players (to be definitively determined in the Shanghai arbitration) from the dollar value of China National's claims for non-payment of goods.

In June 2002, China National sought enforcement of the Beijing arbitral award in the U.S. District Court. Meanwhile, Apex petitioned a Chinese court in an attempt to vacate the Beijing arbitral award. It argued that the Beijing arbitration panel lacked jurisdiction to accept China National's arbitration application. The Chinese court rejected Apex's application to quash the Beijing arbitral award in August 2002. In January 2003, the U.S. District Court confirmed the final, partial Beijing arbitral award.

On appeal, Apex argues that the Beijing arbitral award resulted from a proceeding that did not accord with the arbitration provision of the parties' purchase orders. According to Apex, the parties agreed to arbitrate their disputes in one of three fora—either Beijing, Shanghai, or Shen-zhen—and not in multiple venues. The first party to file, Apex argues, would select the appropriate forum. The parties do not dispute—and CIETAC found—that Apex filed its arbitration application first in Shanghai, and China National filed its arbitration application second in Beijing. CIETAC permitted the two separate but related arbitrations to proceed along parallel paths. Apex argues that only one proceeding, the Shanghai arbitration, should have taken place. It claims China National should have filed any claims as counterclaims in the Shanghai arbitration initiated by Apex.

## STANDARD OF REVIEW

■ Our "review of a foreign arbitration award is quite circumscribed." *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992). Rather than review the merits of the underlying arbitration, we review de novo only whether the party established a defense under the Convention. *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir.2003).

## DISCUSSION

The United States implemented its Convention obligations in domestic law by way of the second chapter of the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 201–208. Section 207 of the FAA provides that a U.S. court "shall confirm" a foreign arbitral award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Convention]." 9 U.S.C. § 207. It thereby incorporates by reference the Convention's seven enumerated exceptions or defenses to the mandatory recognition or enforcement of a foreign arbitral award.

Apex invokes the Convention's Article V, § 1(d) defense against enforcement of the

Beijing arbitral award. Section 1(d) provides that

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that ... (d) ... *the arbitral procedure was not in accordance with the agreement of the parties* ...

Convention, art. V, § 1(d) (emphasis added). Apex contends that the twin arbitrations in Shanghai and Beijing violated the arbitral procedure in the parties' purchase orders and that, therefore, § 1(d) now bars enforcement of the Beijing arbitral award.

A. CIETAC did not trump the parties' specific contractual terms with its own arbitral rules.

■ Apex claims that the arbitrators used the purchase orders' "general reference" to CIETAC's standard arbitration rules to trump the specific contractual provisions of the parties' arbitration clause. Generally, "separately negotiated ... terms are given greater weight than standardized terms or other terms not separately negotiated." Restatement (Second) of Contracts § 203(d).

*Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos,* 25 F.3d 223 (4th Cir.1994), illustrates this principle in the context of an agreement providing for arbitration pursuant to an arbitrating body's rules. In *Cargill,* the parties' arbitration agreement specifically and expressly provided that "[a]ny dispute ... which may arise in the ... performance of this Contract shall be resolved by arbitral award (decision of arbitrators) *chosen by mutual agreement.*" *Id.* at 224 (emphasis added). The parties submitted the case for arbitration. *Id.* The arbitrating body, the Rice Miller's Association ("RMA"), dis-

regarded the parties' specific contractual provision calling for mutual agreement in the selection of arbitrators. *Id.* Instead, the RMA followed its standard Arbitration Rule 8(a), pursuant to which the RMA arbitration committee appointed the arbitrators *without* receiving the parties' mutual agreement. *Id.* The Fourth Circuit reversed, concluding that RMA failed to follow the parties' contract when it trumped the parties' specific provision requiring mutual agreement with its standard rules, which did not require mutual assent. *Id.* at 225 & n. 2.

■ Here, Apex cites *Cargill* to argue that CIETAC trumped the parties' specific arbitral clause with its standard CIETAC rules. Apex's reliance on *Cargill* is misplaced. The District Court honored *Cargill's* principle: Nothing in the parties' purchase orders either specifically designated Shanghai as the only appropriate arbitral forum or articulated a rule of decision for determining the appropriate forum. Apex is mistaken in its claim that the arbitration clause was sufficiently specific that CIETAC could determine the arbitral forum without reference to its arbitral rules. The purchase orders each provide

> ARBITRATION: All dispute[s] arising from or in connection with this Contract shall be submitted to [CIETAC] for arbitration which shall be conducted by [CIETAC] in Beijing or by its Shenzhen Sub–Commission in Shenzhen or by its Shanghai Sub–Commission in Shanghai at the Claimant's option in accordance with [CIETAC's] arbitration rules in effect at the time of applying for arbitration. The arbitral award is final and binding upon both parties.

The clause provides that arbitration proceedings "shall be conducted" by CIETAC. Although the clause specifies that the choice of forum in one of three alternative

venues, listed disjunctively, is "at the Claimant's option in accordance with [CIETAC's] rules," the clause does not define "Claimant" but leaves it open as a variable term (*i.e.* either party could be a claimant).

If only Apex or China National purported to be a claimant, the arbitration clause would be specific enough to determine the correct forum. Forum is at the claimant's option. Here, however, both China National and Apex assert they are "claimants." Apex contends it alone is the claimant against China National. Ergo, selection of a forum among the three fora was its option. China National counters that there were actually *two* claimants. It too was a rightful claimant with respect to its claims against Apex as its claims involved non-payment of non-defective goods, a substantively different concern than Apex's claims brought in the Shanghai forum. Ergo, it was China National's prerogative to pick a forum for its own claims. Both positions are arguable, and in the face of an assertion that there can be two claimants, the text of the arbitration clause alone is indeterminate and does not resolve the matter.

Significantly, though, the arbitration clause recognizes that the clause itself might not adequately settle forum disputes and directs that CIETAC conduct the arbitration "at the Claimant's option in accordance with [CIETAC's] arbitration rules in effect at the time of applying for arbitration." The clause did not merely incorporate the text of CIETAC's rules into the parties' purchase orders. Rather, the arbitral clause calls upon CIETAC to conduct the arbitration in accordance with its rules. It asks CIETAC to apply, or interpret, the applicability of its own rules. By agreeing to the purchase orders, the parties agreed to CIETAC's interpretation of its rules. Thus, CIETAC did not trump specific terms of the parties' purchase orders by turning to its own rules because the arbitral clause did not resolve the parties' dispute itself.

**B. CIETAC permissibly interpreted its arbitral rules to determine there was a forum dispute to resolve.**

■ Alternatively, Apex argues that even if CIETAC did not trump the arbitration clause with its own rules, no dispute existed for CIETAC to resolve as Apex indisputably filed its claims first in Shanghai. Article 12 of CIETAC's arbitral rules provides the rule of decision for determining the place of arbitration:

> The parties may agree to have their dispute arbitrated by the Arbitration Commission in Beijing or by the Shenzhen Sub–Commission in Shenzhen or by the Shanghai Sub–Commission in Shanghai. In the absence of such an agreement, the Claimant will have option to submit the case to be arbitrated by the Arbitration Commission in Beijing or by the Shenzhen Sub-commission in Shenzhen or by the Shanghai Sub–Commission in Shanghai. *When deciding on where the case should be arbitrated, the first choice should be final. In case of any dispute, [CIETAC] will make a decision accordingly.*

(emphasis added). Because Apex filed first, it argues that its choice of forum, Shanghai, "should be final." Apex interprets Article 12 to authorize CIETAC to resolve only factual disputes over who filed first. According to Apex, the language, "[i]n case of any dispute, [CIETAC] will make a decision accordingly," refers solely to disputes about the independent clause of the prior sentence, "the first choice should be final," or disputes over who filed first. China National and CIETAC, however, interpret the language "any dispute" to refer to the entire prior sentence, thereby encompassing ultimate questions of

"where the case should be arbitrated." The parties' positions involve arguable constructions of CIETAC's arbitral rules. We need not resolve this interpretive dilemma because, as previously noted, the parties agreed to CIETAC's interpretation of its own rules. Therefore, CIETAC permissibly interpreted its arbitral rules to determine that there was a forum dispute to resolve.

### C. The parties agreed to this procedure, irrespective of efficiency.

Apex argues that twin arbitrations on the same purchase orders in different fora and before different panels of arbitrators are inefficient. It is correct on this point. The parties' purchase orders, however, called for CIETAC's interpretation of its rules and, therefore, the resulting inefficient procedure. Apex asserts that the procedure used in the arbitrations "would never have been permitted if parties were left to litigate in U.S .... courts." That might be so, assuming a U.S. court would have treated China National's claims as compulsory counterclaims. *See* Fed. R.Civ.P. 13(a). But the parties did not agree to litigate the merits of their disputes in U.S. courts; rather, they agreed to arbitration by CIETAC with CIETAC interpreting its own arbitral rules.

### CONCLUSION

Apex failed to establish that the CIETAC arbitral procedure was not in accordance with the parties' agreement. CIETAC did not trump specific terms of the parties' agreement by turning to its own rules because the arbitral clause did not resolve the parties' dispute itself. In addition, there was a dispute for CIETAC to resolve. CIETAC permissibly interpreted Article 12 to encompass not only disputes over who filed first but also the ultimate question of where the case should be arbitrated. Finding no defense against enforcement of the arbitral award, United States courts "shall confirm" the award. 9 U.S.C. § 207. The judgment of the district court is AFFIRMED.