**SEUNG WOO LEE, as Co–Receiver for Medison Co. Ltd. a Korean corporation; Gil Soo Ryu, as Co–Receiver for Medison Co. Ltd. a Korean corporation, Petitioners—Appellees,**

v.

**IMAGING3, INC., a California corporation, f/k/a Imaging Services, Inc., Defendant—Appellant.**

No. 06–55993.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2008.

Filed June 19, 2008.

Mark S. Faulkner, Esq., Chan Soo Jeon, Esq., Lee, Hong, Degerman, Kang & Schmadeka, Los Angeles, CA, for Petitioners–Appellees.

Richard D. Farkas, Esq., Law Offices of Richard D. Farkas, Sherman Oaks, CA, for Defendant–Appellant.

Before: NOONAN, W. FLETCHER, and GOULD, Circuit Judges.

MEMORANDUM *

Appellant Imaging3 appeals the district court's order granting summary judgment

---

* This disposition is not appropriate for publication and is not precedent except as provided

to plaintiffs, Seung Woo Lee and Gil Soo Ryu, who sued in their capacities as receivers for Medison Company, a South Korean Corporation (collectively, "Medison"). Medison sued Imaging3 seeking to enforce an arbitration award issued by the Korean Commercial Arbitration Board ("KCAB") to resolve a commercial dispute between Medison and Imaging3 involving the sale and delivery of "C-arms" for use in medical imaging devices. Imaging3 answered with thirty-seven defenses and filed counterclaims, primarily contesting the substance of the claim that was adjudicated before the KCAB. The district court granted summary judgment to Medison, concluding that Imaging3's defenses were beyond the scope of the district court's discretion concerning the confirmation of foreign arbitral awards and that the counterclaims were precluded because the dispositive issues had been litigated in the foreign arbitration. The district court confirmed the KCAB award. Imaging3 timely appealed, and we now affirm.

Around November 1, 2000, Medison and Imaging3 entered a written agreement in which Medison agreed to deliver "C–Arms" to Imaging3. That contract states that the agreement will be "governed and construed under international trade law, as applicable to contracts made and fully performed internationally." That agreement also states that Imaging3 [1] could from time to time submit specific orders to Medison for the C-arms.

On October 26, 2001, Imaging3 and Medison entered into an additional contract for the sale of ten C-arms. That contract provides terms concerning shipment, insurance, and inspection of the C-arms, and contains a specific section on arbitration stating:

by Ninth Circuit Rule 36–3.

All disputes, controversies or differences which may arise between the parties [Medison and Imaging3], out of or in relation to or in connection with this contract shall be finally settled by arbitration in Seoul, Korea in accordance with the commercial arbitration rules of the Korea [C]ommercial Arbitration Board and under the laws of Republic of Korea. The award rendered by the arbitration shall be final and binding upon both parties concerned.

The transaction between Medison and Imaging3 did not go well. Medison delivered the ten C-arm devices to Imaging3 under the October 26 contract, but a dispute arose between the two parties over the quality of, support for, and shipment of the items. Imaging3 did not pay Medison what was due under the contract, and Medison submitted the dispute to arbitration before the KCAB.

Imaging3 received notice of and submitted documentation to the KCAB arbitration, and the arbitrators issued an opinion in December 2004. The arbitrators ordered Imaging3 to pay Medison $515,000 for the C-arms, interest, and arbitration expenses, plus additional interest if Imaging3 did not promptly pay. The arbitrators found: first, that the October 26 contract unquestionably provided for arbitration before the KCAB; second, that the receivers were proper parties to pursue the action in light of Medison's insolvency; and third, that Medison had performed satisfactorily and was entitled to payment. Imaging3 did not pay the award, and Medison petitioned the United States District Court for the Central District of California for confirmation of the foreign arbitration award.

1. At the time of the contract, Imaging3 was known as "Imaging Services, Inc."

We review de novo a district court's decision to grant summary judgment. *Blue Mountains Biodiversity Project v. Blackwood,* 161 F.3d 1208, 1211 (9th Cir. 1998). However, because this case involves a foreign arbitration award, our review is circumscribed in important respects. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly called the "New York Convention," provides for the enforcement of foreign arbitral awards in the domestic courts of convention parties, which include the United States. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Dec. 29, 1970, 21 U.S.T. 2517, 330 U.N.T.S. 3 [hereinafter "New York Convention"]. Federal law permits a party who was victorious in a recognized foreign arbitration proceeding to seek confirmation of the award in the United States under the New York Convention, and the statute gives the courts little discretion when considering such petitions: "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. The grounds for the court's refusal or deferral of recognition or enforcement of an arbitration award are limited to the seven grounds listed in Article V of the New York Convention.[2] *See China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.,* 379 F.3d 796, 799–800 (9th Cir.2004) ("Our review of a foreign arbitration award is quite circumscribed. Rather than review the merits of the underlying arbitration, we review de novo only whether the party established a defense under the Convention.") (citations and internal quotation marks omitted).

None of Imaging3's defenses falls within the grounds permitted by New York Convention, and Imaging3 offers no compelling reason for the panel to doubt the applica-

**2.** Article V states:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, Art. V.

bility of the arbitration clause contained in the October 26 contract. Although Imaging3 argues that the October 26 contract was between Imaging3 and "Medison Econet," not "Medison," and that Medison breached its contract with Imaging3, those issues were considered by the KCAB and are not subject to reconsideration here. *See China Nat. Metal Prod.*, 379 F.3d at 799–800; 9 U.S.C. §§ 201, 207. Moreover, Imaging3's answer conceded that Imaging3 entered into the October 26 contract with Medison.

Imaging3's affirmative defenses suffer from the same flaw: all deal with the merits of the underlying contract claim and are not valid defenses under the New York Convention. Imaging3 claims that it suffered from incapacity, which it argues was present "not at the time of the signing of the underlying contract, but at the time of the hearing, based on its catastrophic fire loss." Incapacity is a basis on which the district court could refuse to enforce an arbitration award under the New York Convention, but incapacity "at the time of the hearing" is not a true incapacity defense to the consummation of a contract. Imaging3's defenses present no reason for the panel to disturb results of the arbitration hearing.

The district court correctly determined that the counterclaims were barred by res judicata. "An arbitration decision can have res judicata or collateral estoppel effect[.]" *C.D. Anderson & Co., v. Lemos*, 832 F.2d 1097, 1100 (9th Cir.1987) (citation and alteration omitted). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Imaging3 seeks to use the counterclaims to re-

litigate the entire contract dispute with Medison on the same issues presented to the KCAB. KCAB ruled on these arguments in its order granting relief to Medison, and determined that the receivers for Medison were proper parties. Imaging3 cannot disturb that result merely because it is unhappy with the result from the arbitrator.

AFFIRMED.