UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 05-1273
(CA-03-3484-PJM)

WILLIAM B. DOCKSER; H. WILLIAM WILLOUGHBY;
C.R.I., INCORPORATED,

                                        Plaintiffs - Appellants,

        versus

MARTIN C. SCHWARTZBERG,

                                        Defendant - Appellee.

O R D E R

        The court amends its opinion filed January 3, 2006, as follows:

        On page 1, attorney information section, line 2 -- the name "SHIFF" is corrected to read "SCHIFF."

                                        For the Court - By Direction

                                        ___/s/ Patricia S. Connor___

                                                Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WILLIAM B. DOCKSER; H. WILLIAM
WILLOUGHBY; C.R.I., INCORPORATED,
          *Plaintiffs-Appellants,*

v.

MARTIN C. SCHWARTZBERG,
          *Defendant-Appellee.*

⎱
⎰ No. 05-1273

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-03-3484-PJM)

Argued: December 1, 2005

Decided: January 3, 2006

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Widener and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Deborah L. Thaxter, NIXON PEABODY, L.L.P., Boston,
Massachusetts, for Appellants. Frederick J. Sperling, SCHIFF
HARDIN, L.L.P., Chicago, Illinois, for Appellee. **ON BRIEF:** Louis
E. Dolan, Jr., NIXON PEABODY, L.L.P., Washington, D.C., for
Appellants. Sondra A. Hemeryck, David C. Scott, SCHIFF HARDIN,
L.L.P., Chicago, Illinois; Rachel T. McGuckian, MILES & STOCK-
BRIDGE, P.C., Rockville, Maryland, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2000), establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Plaintiffs in this case do not contest that they are contractually bound to arbitrate the merits of their dispute, but seek to litigate whether one arbitrator, rather than three, should preside over the arbitration. We conclude that judicial intervention on this issue would be inappropriate. The parties have agreed that arbitrator selection should follow the rules and procedures of the American Arbitration Association, and the number of arbitrators is a procedural question to be answered exclusively in that forum. The FAA promotes the efficient resolution of disputes through arbitration, and this goal would be undermined if we were to allow arbitration proceedings to be stalled or nullified by ancillary litigation on minor issues of this type. We accordingly affirm the judgment of the district court dismissing plaintiffs' complaint.

I.

The parties in this case — defendant Martin Schwartzberg and plaintiffs William Dockser, H. William Willoughby, and C.R.I. Inc. — have for years been involved in disputes and litigation arising out of a twenty-year business relationship involving real estate. The parties concluded their litigation by entering into a Definitive Settlement Agreement (DSA) in 1998. Unfortunately, this did not mark the end of their conflict, as Schwartzberg has alleged that plaintiffs failed to meet an obligation under the DSA to pay him over $1 million as his share of distributions of certain real estate partnerships.

The DSA specifies that disputes of this type are to be resolved by binding arbitration. Section 11.7 states in relevant part that

> such arbitration shall be conducted by, and pursuant to the rules of, the American Arbitration Association. . . . If within twenty (20) days of service of the complainant's notice of

claim or complaint, the parties have not mutually agreed to an arbitrator, the arbitrator shall be chosen pursuant to the rules and procedures of the American Arbitration Association.

Schwartzberg filed a Demand for Arbitration with the American Arbitration Association (AAA) on October 15, 2003. In the cover letter to the Demand, Schwartzberg requested that the dispute be arbitrated by a panel of three arbitrators, pursuant to Rule L-2(a) of the AAA's Procedures for Large, Complex Commercial Disputes. That rule provides as follows:

> Large, Complex Commercial Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

The AAA has also specified how and by whom its rules are to be administered. Rule R-2 of its Commercial Arbitration Rules states that

> [w]hen parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct.

Rule R-53 further provides that the rules should be "interpreted and applied" by an arbitrator or by the AAA itself.

On November 10, 2003, plaintiffs filed a complaint in Maryland state court, alleging that Schwartzberg's request for a three-arbitrator

panel violated the DSA. Plaintiffs read § 11.7 of the DSA to expressly specify that a single arbitrator should hear the dispute. Their complaint sought a declaratory judgment that the DSA "requires Schwartzberg's claim to be heard and decided by a single arbitrator," and court appointment of this arbitrator pursuant to § 5 of the FAA, 9 U.S.C. § 5.

Schwartzberg removed the case to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a)(1), 1441(a) (2000). He then filed a Rule 12(b)(6) motion to dismiss, arguing that plaintiffs were not entitled to the relief they had requested. Schwartzberg contends that § 5 does not apply because he has followed the arbitrator-appointment method specified in the DSA, and that the question of the proper number of arbitrators is not for judicial resolution.

Following oral argument, the district court issued a ruling from the bench granting the motion to dismiss. The AAA subsequently informed the parties via letter that three arbitrators would hear the dispute.

Plaintiffs appeal the district court's order. We review de novo a dismissal under Rule 12(b)(6). *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

## II.

We first consider plaintiffs' contention that the district court erred in failing to appoint an arbitrator under § 5 of the FAA. Section 5 provides, in relevant part, that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators . . . and any party thereto shall fail to avail himself of such method . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators." 9 U.S.C. § 5. Plaintiffs contend that Schwartzberg has "failed to avail himself of" the method of arbitrator appointment specified in § 11.7 of the DSA by requesting three arbitrators rather than one.

We cannot agree. The operative language in § 11.7 states that "the arbitrator shall be chosen pursuant to the rules and procedures of the

American Arbitration Association." This is precisely the method of which Schwartzberg has availed himself by sending a Demand for Arbitration to the AAA and requesting the appointment of three arbitrators. AAA Rule L-2(a) provides that since this dispute involves over $1 million, three arbitrators should be appointed unless the parties have "agree[d] upon the number of arbitrators." Plaintiffs contend that the parties have in fact "agreed" upon a single arbitrator, presenting a number of reasons why the term "arbitrator" in § 11.7 of the DSA should be construed to mean a single individual rather than to refer more generically to an arbitral body of unspecified size. But these arguments implicate not the *method* of arbitrator selection — which the DSA specifies to be the rules and procedures of the AAA — but rather the *application* of that method to these particular circumstances. They therefore do nothing to change the fact that Schwartzberg has "avail[ed] himself" of the proper method by requesting arbitration under the AAA rules as *he* believes they should be applied.

Plaintiffs' reliance upon *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223 (4th Cir. 1994), is therefore misplaced. There, we examined an arbitration agreement and determined that for purposes of § 5, "[t]he arbitration clause . . . expressly set[ ] forth the parties' method for appointing arbitrators" as "appointment by mutual agreement of the parties." *Id.* at 225. We then concluded that this method had not been followed where the arbitrators had "determin[ed] . . . their own jurisdiction" by unilaterally appointing themselves. *Id.* at 226. Here, by contrast, the agreement expressly invokes a body of written rules to govern arbitrator selection, and Schwartzberg has not avoided those rules. The question whether they have properly been applied falls outside the ambit of § 5.

### III.

We therefore turn to consider whether, despite the district court's inability to appoint an arbitrator itself pursuant to § 5, it should have issued a declaratory judgment that a single arbitrator must be appointed under the rules and procedures of the AAA. This issue turns on whether application of the parties' chosen method of arbitrator selection should be performed by a court or by the arbitral forum.

We conclude that the question of the number of arbitrators is one of arbitration procedure, and that the parties' agreement does nothing to overcome the presumption that such questions are for arbitral, rather than judicial, resolution.

A.

The purpose behind Congress's passage of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA therefore eliminates any bias in favor of judicial resolution of disputes, and establishes that where a contract includes an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

Included within the scope of this default rule are not only the merits of the underlying dispute but also issues relating to the procedural aspects of the arbitration itself. The Supreme Court has instructed that "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (internal quotation marks omitted). Not only would it be extremely difficult to cleanly separate disputes into "procedural" and "substantive" components, but attempting to do so would risk both duplication of effort — because "the arbitrator would ordinarily remain free to reconsider the ground covered by the court insofar as it bore on the merits of the dispute" — and delay. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 558 (1964).

There does exist a limited exception to the overarching policy favoring the arbitral decisionmaker. "The question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (internal quotation marks and alterations omitted). The Supreme Court has found "questions of arbitrability" to exist only

> in the kind of narrow circumstance where contracting parties would likely have expected a court to decide [a] gateway

matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* at 83-84. The Court has therefore found the exception applicable only when there is a question regarding whether the parties should be arbitrating at all. *See, e.g.*, *id.* at 84 (court should decide "whether the parties are bound by a given arbitration clause"); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (court should decide whether a particular dispute on the merits falls within the scope of a concededly binding arbitration clause). In other circumstances, resolution by the arbitrator remains the presumptive rule. *See Howsam*, 537 U.S. at 83.

## B.

The presumption of arbitration applies in this case, because whether one arbitrator or three ought to hear the parties' dispute is not a "question of arbitrability," but instead a procedural one. It is not an issue that parties would have expected a court rather than an arbitrator to decide, *see Howsam*, 537 U.S. at 83, because the AAA rules, which the parties contractually agreed to employ, provide specific nonjudicial procedures for its resolution. Moreover, judicial decision is not necessary to "avoid[ ] the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate," *id.* at 83-84, because the parties do not dispute that their arbitration clause is binding.

The issue instead fits squarely within the Supreme Court's jurisprudence regarding what constitutes a "procedural" question. In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), a plurality of the Court determined that an arbitrator, rather than a judge, should determine whether an arbitration agreement allowed for class-action arbitration proceedings. *Id.* at 447. As in that case, the issue here "concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties," but rather "what *kind of arbitration proceeding* the parties agreed to." *Id.* at 452. The issue furthermore does not involve "a state statute or judicial proce-

dures," but rather "contract interpretation and arbitration procedures." *Id.* at 452-53. These are questions that "arbitrators are well situated to answer." *Id.* at 453.

This case moreover resembles *Howsam*, in which the Court determined that an arbitrator rather than a court should decide whether the arbitral forum's time-limit rule barred a particular arbitration. *See* 537 U.S. at 85. This case, like that one, implicates the written rules governing the parties' arbitration proceeding. As the Court explained in *Howsam*, arbitrators are "comparatively more expert" regarding the meanings of such rules and are "comparatively better able to interpret and to apply" them. *Id.* at 85. "And for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy — a goal of arbitration systems and judicial systems alike." *Id.* It is therefore not only legally proper, but eminently sensible, that the dispute here is presumptively one for the arbitral forum to resolve.

Plaintiffs take issue with this conclusion, raising the novel argument that arbitrating the question here would present an "absurd 'chicken and egg' problem." They claim that if *x* number of arbitrators decide that there ought to be *y* number of arbitrators, the decision becomes ipso facto invalid. But many procedural questions exhibit this supposed bootstrapping problem, and accepting plaintiffs' argument would nullify the rule that these questions are arbitrable. Under plaintiffs' view, an arbitrator could not, for example, determine whether an arbitration agreement required arbitration in Boston instead of California, *see Richard C. Young & Co. v. Leventhal*, 389 F.3d 1, 2, 4 (1st Cir. 2004) (holding forum-selection clauses arbitrable), without succumbing to paralysis as to where to hold the proceedings necessary to decide the issue. A similar conundrum would arise regarding whether the permissibility of consolidating separate arbitration proceedings is an issue for a single arbitrator or a host of different ones. *See Green Tree*, 539 U.S. at 447 (plurality opinion) (holding that an arbitrator should decide whether plaintiffs can arbitrate as a class); *Shaw's Supermarkets v. United Food & Commercial Workers Union, Local 791*, 321 F.3d 251, 252 (1st Cir. 2003) (holding that an arbitrator should decide whether three arbitrations can be consolidated into one). We need not countenance such a result, which would defy

both the Supreme Court and the congressional policy favoring arbitration. By presumptively remitting procedural questions to the arbitral body, the FAA necessarily recognizes that decisionmaker's authority to answer them.

C.

Applying the presumption favoring arbitrability, we find that because the parties have not contractually agreed otherwise, the question of the proper number of arbitrators is for arbitral rather than judicial decision. Plaintiffs contend that we should reach a contrary conclusion, attempting to factually distinguish *Green Tree* and *Howsam*. According to them, the arbitration provisions in those cases were written broadly enough to encompass arbitration of procedural issues, whereas the one in the DSA is not. This argument turns the presumption favoring arbitrability of procedural issues on its head. The entire point of the presumption is that an arbitration agreement need not expressly include procedural matters within its scope — silence is simply the fact that triggers the presumption. Instead, the onus is on the party seeking litigation on a procedural issue to show that the agreement somehow excludes that issue from arbitration. *See Howsam*, 537 U.S. at 84. Plaintiffs do not and cannot demonstrate such exclusion here.

Plaintiffs also take issue with the fact that the question regarding the number of arbitrators has apparently been resolved by a letter from the AAA's administrative staff, rather than in formal arbitration proceedings. But they contractually agreed to precisely this procedure. According to the AAA rules, parties that invoke the rules "thereby authorize the AAA to administer the arbitration," and "[t]he authority and duties of the AAA . . . *may be carried out through such of the AAA's representatives as it may direct*" (emphasis added). While we may not recognize any general authority for administrative bodies of arbitral forums to decide procedural questions, *see Cargill*, 25 F.3d at 226, parties are certainly empowered to expressly grant them the ability to do so. *See, e.g.*, *First Options*, 514 U.S. at 943 ("[A]rbitration is simply a matter of contract between the parties."). Plaintiffs' dissatisfaction with the alleged lack of formal consideration given to their arguments in favor of a single arbitrator is a complaint

with the AAA — and the contract they signed agreeing to abide by its rules — rather than with a court.

## IV.

The FAA's "'liberal federal policy favoring arbitration'" is premised upon "Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone*, 460 U.S. at 24). It would eviscerate this policy and the goal underlying it if parties to a concededly binding arbitration agreement were nonetheless able to hale one another into court to contest even the most minor of issues regarding their arbitration. The presumption that most matters are for the arbitrator exists specifically to repudiate such scorched-earth litigation tactics. *See, e.g.*, *John Wiley & Sons*, 376 U.S. at 558.

There is no reason to believe that plaintiffs will suffer prejudice if their dispute is heard by a panel rather than by a single individual. Indeed, if anything, the presence of three arbitrators might result in a more deliberative decision. Nevertheless, this issue has been the subject of extended controversy, not only in the district court but at the appellate level as well. The goal of arbitration is to save time and money, and the proceedings in this case have done precisely the opposite. The district court's dismissal of plaintiffs' complaint is therefore

*AFFIRMED*.