In the

# United States Court of Appeals

### For the Seventh Circuit

_____

05-3437

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

*Plaintiff-Appellant,*

v.

CENTURY INDEMNITY COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-C-0263—**John C. Shabaz**, *Judge.*

_____

ARGUED FEBRUARY 6, 2006—DECIDED APRIL 4, 2006

_____


Before FLAUM, *Chief Judge,* and ROVNER and SYKES, *Circuit Judges.*

FLAUM, *Chief Judge.* Defendant-Appellee Century Indemnity Company ("Century") is an insurance company that has entered into reinsurance agreements with a number of reinsurers, including Plaintiff-Appellant Employers Insurance Company of Wausau ("Wausau"). Two of the reinsurance agreements between Century and Wausau are at issue in this appeal. Century paid money to its insureds under certain reinsured policies and maintains that its reinsurers, including Wausau, must reimburse it for those payments. Century demanded that its reinsurers

participate in a consolidated arbitration to determine liability for the payments. Wausau acknowledges that its reinsurance agreements require it to arbitrate, but argues that it cannot be required to participate in a consolidated arbitration.

Wausau brought suit in federal district court, seeking declaratory judgment. Wausau urged the district court to find that it was entitled to two separate arbitrations for the two reinsurance agreements it has with Century. Wausau also sought a declaration that it could not be required to participate in a consolidated arbitration with other reinsurers. The district court found for Century. It held that the question whether Century could be required to participate in a consolidated arbitration was a question for the arbitrator, not the court. The district court ordered Wausau to appoint an arbitrator in accordance with the terms of the Agreements and proceed to arbitration with Century. Wausau appeals. For the following reasons, we affirm.

## I. Background

Wausau and Century are insurance companies. In this case, Century is the insurer and Wausau the reinsurer. Century has issued an insurance policy to Aqua-Chem, Inc. ("Aqua-Chem"). Century and Wausau entered into two reinsurance agreements pertaining to the Aqua-Chem policy, the First Excess Agreement and the Second Excess Agreement ("Agreements"). Each of the Agreements covers a different "layer" of the Aqua-Chem policy.[1] Aqua-Chem

---

[1] A "layer" begins coverage at a certain level (the "attachment point" of coverage) and ends coverage at a certain level (the limit of coverage). For example, a $10 million insurance policy could be split into three different layers: the insurer could retain

(continued...)

was subject to liability for asbestos bodily injury claims and presented the claims to Century for payment. Century paid the claims and billed its reinsurers for their alleged shares of Aqua-Chem's claims. Several reinsurers, including Wausau, did not pay Century. Therefore, in October 2004, Century demanded that these reinsurers participate in a consolidated arbitration. Century also demanded that Wausau and the other reinsurers collectively name an arbitrator within 60 days of the demand; otherwise, Century would name an arbitrator for them.

Wausau acknowledges that it is required to arbitrate with Century. The First Excess Agreement and the Second Excess Agreement contain identical arbitration clauses. The arbitration clauses state, in relevant part:

ARBITRATION

As a condition precedent to any right of action hereunder, *any dispute arising out of this Agreement* shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting in New York, New York, unless otherwise agreed.

The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies or Underwriters at Lloyd's, London not under the control of either party to this Agreement. *Each party shall appoint its arbitrator and the two arbitrators shall choose an umpire* before instituting the hearing. If the respondent fails to appoint its arbitrator within 60 days after being requested to do so by the

---

[1] (...continued)
liability for the first $1 million in claims, enter a reinsurance agreement that attaches at the $1 million point and provides $4 million in coverage, and enter a second reinsurance agreement that attaches at the $5 million point and provides $5 million in coverage.

claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree on the appointment of an umpire within 60 days after their nomination, each of them shall name three of whom the other shall decline two, and the decision shall be made by drawing lots.

The Agreements do not contain any express provisions regarding consolidated arbitration.

While acknowledging that it must arbitrate, Wausau objected to participating in a consolidated arbitration. Wausau argued that the First and Second Excess Agreements are separate contracts and contain no language expressing Wausau's consent to participate in one arbitration involving both contracts or any arbitration involving other reinsurers.

Wausau filed suit in federal district court, seeking a declaration that 1) it was entitled to separate arbitration proceedings for the First and Second Excess Agreements and 2) these proceedings must be independent of any arbitration between Century and its other reinsurers. Allstate, another reinsurer, intervened in the case as a plaintiff.[2] Wausau and Allstate filed for summary judgment. Century filed a motion to dismiss and a cross-motion for summary judgment.

The district court granted in part and denied in part Wausau's motion for summary judgment. It found that the arbitrator, not the court, should decide whether consolidation is permitted under the parties' Agreements, based on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). The district court explained that, absent evidence of the parties' contrary agreement, procedural issues like consoli-

---

[2]   Allstate did not appeal from the district court's judgment and is not a party to this proceeding.

dation are for the arbitrator to decide. The district court continued, however, that each Agreement "provides an unambiguous procedure for the creation of its own arbitration panel to resolve this and any other disputes that might later arise." The district court therefore ordered Wausau and Allstate to submit to separate arbitrations, where "their arbitrators may consider the issue of consolidation once they have been seated."

Wausau appealed. It also filed a motion with the district court to stay its order, pending exhaustion of Wausau's appeal. The district court denied the motion. Wausau then filed a motion for a stay with this Court, which was denied on October 20, 2005.

## II. Discussion

In this case, both parties admit that the Agreements' arbitration clauses are silent as to whether consolidated arbitration is permissible. The central question on appeal is *who* should decide whether the Agreements forbid consolidated arbitration: the district court, or the arbitrator? This Circuit and the Supreme Court have yet to resolve that exact question.

Wausau argues that the issue of whether consolidation is allowed is a question of "arbitrability" that must be addressed by the court, unless there is clear and unmistakable evidence that the parties intended the arbitrator to decide. Century argues the opposite, that the issue of consolidation is a procedural one that should be resolved by the arbitrator in the first instance, unless the parties' arbitration agreement provides that the court must resolve it.

The Supreme Court has established a framework for analyzing the issue we are presented with. In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Supreme Court considered the question of who should deter-

mine whether a given dispute is arbitrable—the court or the arbitrator. The Court held that, unless the arbitration agreement is clear and unmistakable that the issue of arbitrability is for the arbitrator, it should be resolved by the court. *Id.* at 944. Wausau maintains that the dispute over consolidation is a dispute over arbitrability, and thus must be resolved by the court.

Wausau incorrectly characterizes the consolidation question as a question of arbitrability. Cases since *First Options* have helped clarify which questions qualify as "arbitrability" questions. In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Court explained:

> Linguistically speaking, one might call any poten-tially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope. The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gate-way dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* at 83-84.

The *Howsam* Court provided two examples of "a gate-way dispute" that would raise a question of arbitrability and thus should be decided by a court: 1) a dispute re-garding "whether the parties are bound by a given arbitra-tion clause"; and 2) "a disagreement about whether an

arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 84. The Court also explained that "[t]he phrase 'question of arbitrability' is not applicable in other kinds of general circumstances where parties would likely expect that an arbitrator would decide the gateway matter." *Id.* For example, "'*"procedural"questions* which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." *Id.* (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) (emphasis added). The *Howsam* Court decided that a question regarding the applicability of a National Association of Securities Dealers time-limit rule was presumptively for the arbitrator. The Court explained that "such a dispute seems an 'aspec[t] of the [controversy] which called the grievance procedures into play.'" *Id.* at 85 (quoting *John Wiley & Sons*, 376 U.S. at 559).

We find based on *Howsam* that the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve. It does not involve whether Wausau and Century are bound by an arbitration clause or whether the arbitration clause covers the Aqua-Chem policies. Instead, the consolidation question concerns grievance procedures—i.e., whether Century can be required to participate in one arbitration covering both the Agreements, or in an arbitration with other reinsurers.

Our holding is consistent with the decisions of our sister circuits in similar cases. For instance, in *Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 791*, 321 F.3d 251 (2003), the First Circuit relied on *Howsam* in deciding that the arbitrator, not a court, should determine if arbitrations can be consolidated. *See id.* at 254-55. The court found that consolidation is a procedural issue. *Id.* at 254. *Shaw's Supermarket* involved three collective bargaining agreements ("CBAs"), each of which provided for

arbitration as the fourth and final step of a multi-part grievance process. *Id.* at 252. The court found that the parties agreed that their disputes were arbitrable, and therefore there was not a dispute over arbitrability, which would be decided by a court. Since there was "no evidence in the CBAs here that the parties did not expect their disputes regarding matters such as consolidation to be resolved through arbitration," the arbitrator should decide whether consolidation was appropriate. *Id.* at 254. The court also concluded that "[l]eaving the decision whether to consolidate the three proceedings in the hands of the arbitrator comports with long-standing precedent resolving ambiguities regarding the scope of arbitration in favor of arbitrability." *Id.* at 254.

Similarly, in *Dockser v. Schwartzberg*, 433 F.3d 421 (4th Cir. 2006), the Fourth Circuit determined that the arbitrator, rather than the court, should determine whether one arbitrator, rather than three, should preside over the arbitration. *Id.* at 426. *Dockser* involved an arbitration provision, contained in a settlement agreement, that provided that one arbitrator should be appointed. *Id.* at 423-24. The arbitration provision also provided that American Arbitration Association ("AAA") rules and procedures should be applied in choosing the arbitrator. *Id.* The AAA rules allow for the appointment of either 1 or 3 arbitrators. *Id.* The defendant filed a demand for arbitration with the AAA, requesting 3 arbitrators. *Id.* at 423. The plaintiffs filed suit, alleging that the defendant's request violated the parties' arbitration provision. *Id.* at 424. The court determined that the issue of how many arbitrators should be used "fits squarely within the Supreme Court's jurisprudence regarding what constitutes a 'procedural' question." *Id.* at 426. The court explained that "the issue here 'concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties,' but rather 'what *kind of arbitration proceeding* the

parties agreed to.'" *Id*. (quoting *Green Tree*, 539 U.S. at 452). Thus, the issue was a procedural one for the arbitrator. *Id.*

We agree with the approach of the First and Fourth Circuits. Using the same analysis, we find that consolidation is a procedural issue. Wausau and Century agree that their underlying dispute regarding the Aqua-Chem claims is subject to arbitration. Thus, the only question is the kind of arbitration proceeding their Agreements allow. This comes down to a matter of contract interpretation, which the arbitrator is well qualified to address. *See We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 844 (7th Cir. 1999) ("Once the court determines that an arbitration clause is enforceable, the status of the other contract terms is for the arbitrator to decide."); *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 650-51 (7th Cir. 2003) ("[A]fter a court ascertains that the subject matter of a particular dispute is covered by the parties' arbitration agreement, any procedural questions—such as whether the arbitration procedures were properly followed—are reserved for the arbitrator."); *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 581 (7th Cir. 2001) ("[T]he arbitrator has considerable leeway so long as he respects the limits the parties' contract and public law place on his discretion."); *see also Green Tree*, 539 U.S. at 452-53 (stating that "[a]rbitrators are well situated to answer" questions related to "what kind of arbitration proceedings the parties agreed to"). Additionally, our conclusion is consistent with longstanding federal policy favoring arbitration. *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, No. 04-1264, slip op. at 3, 546 U.S. ___, 126 S. Ct. 1204 (U.S. Feb. 21, 2006); *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730-31 (7th Cir. 2005); *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005); *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002); *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421-22 (7th Cir. 2001).

Although we reach our decision based on *Howsam*, we recognize that the district court based its decision on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). In *Green Tree*, the Supreme Court addressed whether a court or an arbitrator should determine if the parties' arbitration agreements allowed for class arbitration. *See id.* at 447. A plurality of the Court decided that the issue was for the arbitrator. *Id.* at 452-53. The plurality recognized that "[i]n certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter." *Id.* at 452. However, the plurality explained:

> The question here—whether the contracts forbid class arbitration—does not fall into this narrow exception. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. Unlike *First Options*, the question is not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter. Rather the relevant question here is what *kind of arbitration proceeding* the parties agreed to. That question . . . concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question.

*Id.* at 452-53.

Likewise, in this case the question of whether Wausau and Century's Agreements forbid consolidated arbitration concerns the kind of arbitration proceeding the parties agreed to. Thus, the parties' disagreement is not one over "arbitrability," as that term has been described by the Supreme Court. *See Howsam*, 537 U.S. at 85.

We acknowledge, however, that there is debate regarding the precedential effect—if any—of the plurality opinion in *Green Tree*. We are therefore hesitant to base our decision on it. When, as in *Green Tree*, "a fragmented Court

decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal citation omitted); *see also Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 715 n.20 (7th Cir. 2003). Century argues that the narrowest holding in *Green Tree* is that issues regarding the number of arbitrations to be held are for the arbitrator to address. Wausau argues that there is no holding that garnered a majority vote and, in the alternative, that the narrowest holding is that the parties' contracts sent the class arbitration issue to the arbitrator.

Identifying the narrowest holding in *Green Tree* requires us to consider the procedural history of that case. The case concerned contracts between Green Tree, a commercial lender, and its customers. *Green Tree*, 539 U.S. at 447. Each contract contained an arbitration clause governed by the Federal Arbitration Act. *Id.* Customers of Green Tree filed two separate suits against the company in South Carolina state court, alleging violations of the South Carolina Consumer Protection Code. *Id.* at 447, 449. In both cases, plaintiffs sought, and eventually were granted, class certification. *Id.* at 449. Also in both cases, plaintiffs were awarded class damages and attorney's fees. *Id.* The trial court affirmed the awards, and Green Tree appealed, arguing that class arbitration was not allowed under the parties' arbitration agreements. *Id.* The South Carolina Supreme Court withdrew both cases from the appeals court, assumed jurisdiction, and consolidated the proceedings. *Id.* at 450. The South Carolina Supreme Court found that the parties' arbitration agreements were silent as to class arbitration, that class arbitration was therefore authorized, and that the arbitration had properly taken that form. *Id.* The United States Supreme Court reviewed that decision to determine if class arbitration complied with the Federal Arbitration Act. *Id.*

Justice Breyer wrote the opinion of the Court, which Justices Scalia, Souter and Ginsburg joined. Justice Breyer determined that the arbitrator, rather than the court, should have decided whether the parties' agreements forbid class arbitration. *Id.* at 451. Justice Breyer also found that remand to the arbitrators was necessary—even though the South Carolina Supreme Court had reached the correct conclusion that class arbitration was allowed under the agreements—because in each underlying case "there [was] at least a strong likelihood . . . that the arbitrator's decision [to employ class arbitration procedures] reflected a court's interpretation of the contracts rather than an arbitrator's interpretation." *Id.* at 454.

Justice Stevens wrote a concurrence in *Green Tree* and provided the fifth vote for the plurality's judgment. Justice Stevens found that the South Carolina Supreme Court properly "held as a matter of state law that class-action arbitrations are permissible if not prohibited by the applicable arbitration agreement, and that the agreement[s] between these parties is silent on the issue." *Id.* at 454 (Stevens, J., concurring). Justice Stevens disagreed that remand was required. He explained:

> Arguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). Because the decision to conduct a class-action arbitration was correct as a matter of law, and because petitioner has merely challenged the merits of that decision without claiming that it was made by the wrong decisionmaker, there is no need to remand the case to correct the possible error.

*Green Tree*, 539 U.S. at 455 (Stevens, J., concurring). Justice Stevens recognized, however, that if he were to vote to simply affirm the South Carolina Supreme Court's

decision, "there would be no controlling judgment of the Court." *Id.* Thus, "to avoid that outcome, and because Justice Breyer's opinion expresses a view of the case close to [his] own, [Justice Stevens] concur[red] in the judgment." *Id.*

Taking these two opinions together, we cannot identify a single rationale endorsed by a majority of the Court. Justice Breyer reasoned that 1) consolidation is a procedural question for the arbitrator; 2) the Supreme Court should not reach the question whether the parties' agreements forbid class arbitration; and 3) remand is required so that the arbitrators can address whether the agreements forbid class arbitration. Justice Stevens, in contrast, reasoned that 1) the South Carolina Supreme Court correctly held as a matter of state law that the parties' agreements do not forbid class arbitration; and 2) remand was not required, because the parties did not argue that the arbitrator, rather than the court, should have decided the appropriateness of class arbitration. The Justices' rationales do not overlap.

We are aware that the Fifth Circuit has reached a different conclusion regarding the precedential value of *Green Tree.* In *Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355 (5th Cir. 2003), the Fifth Circuit determined that the narrowest ground for decision in *Green Tree* was that the validity of class arbitration is to be decided by the arbitrator, absent evidence that the parties intended the court to resolve the issue. The *Pedcor* court explained:

> The basis on which Justice Stevens *would* have decided the case—that the state court judgment was correct as a matter of law—fails to constitute the most narrow grounds on which the case was decided. The four-member plurality specifically rejected the legal interpretation of the state court because it was a decision by the wrong decision-maker. The grounds

of the Stevens concurrence also differed from the three-member dissent which would have upheld the state court's ability to make the decision but would have reversed on the merits of that court's decision to allow class arbitration. *Justice Stevens did express his agreement, however, with the principle laid down by the plurality that arbitrators should be the first ones to interpret the parties' agreement.* As a result, the plurality's governing rationale in conjunction with Justice Stevens's support of that rationale substantially guides our consideration of this dispute.

*Pedcor*, 343 F.3d at 358-59 (second emphasis added).

We cannot conclude, as the Fifth Circuit did, that Justice Stevens agreed that the arbitrator should be the first to interpret the parties' agreements to determine if they allow class arbitration. Justice Stevens's only references to this point are that "arguably" the arbitrator should have interpreted the agreements first, and that remand was unnecessary to correct the "possible error" of having the court interpret the agreements first. Although it may be likely that Justice Stevens agreed with the plurality that an arbitrator should be the first to interpret the agreements, Justice Stevens argued that the Court should not have addressed the issue, since it was not raised by the parties. We choose not to identify the controlling rationale of *Green Tree* by presuming how Justice Stevens would have decided the issue if the parties had actually raised it.

Fortunately, in this case we need not rely on *Green Tree*. The Supreme Court made clear in *Howsam*, 537 U.S. at 84, that procedural issues are presumptively for the arbitrator to decide. Consolidation is a procedural issue. *See Shaw's Supermarkets*, 321 F.3d at 254; *cf. Dockser*, 433 F.3d at 426. Thus, Wausau now has the burden to show that the Agreements *require* the court, rather than the arbitrator, to address the consolidation issue. *See Howsam*, 537 U.S. at

84; *Dockser*, 433 F.3d at 427 ("[T]he onus is on the party seeking litigation on a procedural issue to show that the agreement somehow excludes that issue from arbitration.").

Wausau has not met its burden. The Agreements make no mention of consolidation, as Wausau necessarily concedes. The arbitration clause in each Agreement states, in relevant part, that "any dispute arising out of this Agreement shall be submitted" to arbitration. This Court has found that the "any dispute arising out of" language "does not address the question of who decides"—the court or the arbitrator. *Conn. Gen. Life Ins. Co. v. Sun Life Assurance Co.*, 210 F.3d 771 (7th Cir. 2000). The Agreements do not discuss who decides disputes regarding consolidation, so we presume the arbitrator decides.

The final issue we must address is how the parties are to proceed with arbitration. The parties have different interpretations of the district court's opinion: Century maintains that the opinion requires Wausau to appoint one arbitrator, for one arbitration covering both Agreements. Wausau maintains that the opinion requires it to appoint two arbitrators, one for each of two arbitrations (one under the First Excess Agreement, and one under the Second).

In the ordering clause of its opinion, the district court stated:

> It is . . . ordered that defendant proceed to arbitration with plaintiff Employer's Insurance Company of Wausau in accordance with the terms of their agreements. Wausau shall appoint its arbitrator. Defendant shall appoint its arbitrator. Thereafter the two arbitrators shall choose an umpire in accordance with the terms of their agreements.

It is clear from this language that the district court intended to require Wausau to appoint one arbitrator and proceed to one arbitration, covering both Agreements.

Wausau argues that ordering it to arbitrate both Agreements in one arbitration would conflict with the terms of the arbitration clauses, for example by not allowing "each party to appoint its arbitrator." We should not and will not consider this argument. The question before us is whether the parties' Agreements specify *who* is to decide whether consolidated arbitration is allowed—the court or the arbitrator. We have determined that the Agreements do not specify and that questions regarding consolidation are presumptively for the arbitrator. Wausau is free to argue at the arbitration that separate arbitrations for the First Excess Agreement and Second Excess Agreement are required under the contracts' terms. If the arbitration panel agrees, it can require the parties to proceed as it deems appropriate.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*