**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2148**

UBS FINANCIAL SERVICES, INC.,

       Petitioner - Appellant,

    v.

GARY T. PADUSSIS,

       Respondent - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:14-cv-03721-WDQ)

Argued: October 25, 2016        Decided: November 22, 2016

Before WILKINSON, KING, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Harris joined.

**ARGUED**: Francis X. Dee, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Newark, New Jersey, for Appellant. Edward Patrick McDermott, Sr., LAW OFFICE OF E. PATRICK MCDERMOTT LLC, Annapolis, Maryland, for Appellee. **ON BRIEF**: Margaret L. Watson, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, New York, New York, for Appellant.

WILKINSON, Circuit Judge:

Appellant UBS Financial Services ("UBSFS") challenges an arbitration award that, in practical effect, granted Gary Padussis over $900,000 in compensatory damages. The district court refused to disturb the award, and we now affirm its judgment. Any other result would open arbitration proceedings to a host of challenges over the very type of subsidiary questions that Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), indicated should be left to the discretion of the arbitral body.

I.

Gary Padussis worked for UBSFS as a financial advisor from 2009 through 2013. When he joined UBSFS, Padussis brought with him a team of three financial advisors as well as an established business clientele. As part of his initial compensation, UBSFS lent Padussis over $2.7 million. Padussis signed a promissory note, which provided that any remaining balance would immediately come due if Padussis ended his employment with UBSFS. Padussis also executed a Letter of Understanding describing his compensation and a Financial Advisor Team Agreement governing the operations of his team. All the agreements provided that any dispute would be subject to arbitration before the Financial Industry Regulatory Authority ("FINRA").

2

Padussis resigned from UBSFS in 2013, complaining that UBSFS had ruined his team of financial advisors and cost him valuable clients. Upon his resignation, Padussis owed UBSFS the remaining balance on the promissory note, nearly $1.6 million. When he failed to pay that amount, UBSFS initiated arbitration on June 3, 2013. Padussis responded with counterclaims on July 31, 2013, alleging that UBSFS's interference with his team was both tortious and a breach of contractual duties.

Under the FINRA Code of Arbitration Procedure for Industry Disputes, the Director of FINRA Dispute Resolution is responsible for the process of selecting the panel of three arbitrators required here. First, the Director mails a list of potential arbitrators for each of the three panel positions to each party "within approximately 30 days after the last answer is due." FINRA Rule 13403. Each "party may strike up to four of the arbitrators from each list" and rank the remaining ones. FINRA Rule 13404. The parties must return their preferences within twenty days of the lists being sent, and the Director then combines the rankings sent by the parties to select the arbitration panel. FINRA Rule 13405.

If a party fails to return its ranked lists within twenty days, the Director proceeds as if that party has no preferences. FINRA Rule 13404(d). The Code allows the Director to extend any deadline set by the Code for good cause. FINRA Rule 13207(c).

3

The Code also gives the Director discretion to "make any decision that is consistent with the purposes of the Code to facilitate the appointment of arbitrators." FINRA Rule 13412. The Director can delegate these duties. FINRA Rule 13100(k).

In this case, FINRA mailed lists of potential arbitrators to the parties on August 21, 2013. UBSFS did not return its ranked lists by the deadline of September 10 because, UBSFS claims, it never received them.

On September 11, UBSFS received a letter, dated September 3, that reminded the parties of the impending deadline for returning their lists. Realizing that it had missed the deadline, UBSFS filed a motion to extend the time to submit its preferences. Padussis opposed this motion. He argued that UBSFS notified him in mid-August that it was transferring the case to new counsel but that the new counsel had not yet filed a notice of appearance. Padussis claimed that this transfer led to confusion over which counsel was responsible for submitting UBSFS's preferences.

FINRA's Regional Director – to whom the Director had apparently delegated responsibility – denied UBSFS's motion for an extension. UBSFS appealed to the Director, who affirmed the denial. The Director ruled that good cause to extend the deadline did not exist because FINRA had timely mailed the

4

initial lists of arbitrators as well as a courtesy reminder, and had not received any mail returned as undeliverable.

FINRA proceeded to select a panel of three arbitrators based on Padussis's lists of preferences. At the first panel hearing, UBSFS challenged the composition of the panel based on UBSFS's lack of participation in the selection of the arbitrators. The panel reviewed the evidence, denied UBSFS's challenge, and proceeded with the arbitration.

On October 27, 2014, the panel issued its final decision. The panel awarded UBSFS $1,683,262 and awarded Padussis $932,887. The decision denied "[a]ny and all relief not specifically addressed." J.A. 24. Pursuant to the FINRA Code, the decision did not explain the panel's reasoning.

UBSFS was altogether displeased with this outcome. Padussis insisted that due to a statutory lien and the prospect of bankruptcy, he would be financially unable to pay the balance of the note, which left UBSFS in the position of owing him over $900,000 for the damage he claimed it had done to his business. UBSFS then filed this action to vacate the arbitral award. It argued that the arbitrators were not selected in accordance with the parties' agreement because UBSFS had not provided its preferences to FINRA. In the alternative, UBSFS sought to have the district court offset the awards, citing Padussis's admission that he was unlikely to be able to pay his portion of

the judgment. The district court confirmed the arbitration award in its entirety and declined to impose an offset. UBSFS now appeals.

                                   II.

The scope of judicial review of an arbitration award "is among the narrowest known at law." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998). Courts may vacate or modify an arbitration award only under the limited circumstances listed in the Federal Arbitration Act, 9 U.S.C. § 10-11, or under the common law if the award "fails to draw its essence from the contract" or "evidences a manifest disregard of the law." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006).

This circumscribed scope of review means that "in reviewing such an award, a district or appellate court is limited to determine whether the arbitrators did the job they were told to do - not whether they did it well, or correctly, or reasonably, but simply whether they did it." Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (internal quotation marks omitted). To ensure arbitrators did the job they were told to do and did not "exceed[] their powers," 9 U.S.C. § 10(a)(4), courts will resolve certain threshold questions of arbitrability. For example, a court will decide whether parties agreed to arbitrate a particular dispute, AT&T Techs., Inc. v.

6

Commc'ns Workers of Am., 475 U.S. 643, 651 (1986), or whether arbitrators were appointed according to the parties' agreement. Cargill Rice v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 225 (4th Cir. 1994).

Beyond these basic questions of arbitrability, courts defer to the arbitral panel both on the merits of the final decision and on procedural questions that "grow out of the dispute," even where those questions "bear on its final disposition." Howsam, 537 U.S. at 84 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)). We need not repair here to the standards of review customarily applied to fact finding and discretionary procedural rulings because that would simply constitute us, contrary to the Supreme Court's admonitions, as a typical appellate court.

The "widely recognized" policy "to encourage the use of arbitration" requires this limited scope of judicial review. Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994). Parties agree to arbitration to avoid the time and expense of litigation. But "to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all." Apex Plumbing, 142 F.3d at 193.

Instead, the narrow standard of review acts as a bulwark against legal ingenuity. Lawyers can easily find one thing or another in almost any proceeding to which they wish to take

7

exception. There are benefits to such legal creativity in many contexts but not in the one before us. Allowing procedural challenges to every award would force parties into court to argue their dispute a second time, incurring the litigation costs and delays they intended to avoid by agreeing to arbitration in the first place.

In other words, the rules that limit our review of arbitration awards are meant to avoid exactly what has happened here, which is a protracted set of judicial proceedings that have sacrificed the very advantages inhering in the arbitral forum.

### III.

UBSFS seeks to vacate the arbitral award on two grounds. It first contends that the arbitrators were not selected according to the parties' agreement. Section 5 of the Federal Arbitration Act provides that if the parties' arbitration agreement includes a method for appointing arbitrators, "such method shall be followed." 9 U.S.C. § 5. This court will generally vacate "[a]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract." Cargill Rice, 25 F.3d at 226.

The parties here agreed to arbitrate according to the FINRA Code. UBSFS complains that because it never received the lists of arbitrators, the process of appointing arbitrators did not

8

follow the method in the Code. An examination of the record shows, to the contrary, that FINRA adhered to the Code.

FINRA Rule 13403(b) requires that the Director create three lists of potential arbitrators for the panel. FINRA did this. Rule 13403(c)(1) requires that the Director mail these lists to the parties. FINRA did this. Rule 13404(d) requires that if the Director does not receive a party's ranked lists within twenty days of sending the lists, "the Director will proceed as though the party did not want to" provide its preferences. FINRA did this too. Rules 13405 and 13406 describe how to appoint the arbitrators after receiving the lists, and FINRA followed these rules as well.

Unable to find a specific rule FINRA violated, UBSFS argues that the Code as a whole "ensure[s] that each party ha[s] the opportunity to participate in the selection of arbitrators." Appellant's Br. at 23. UBSFS points to the fact that a few rules describe the parties' participation in selecting arbitrators, but this is unsurprising in a Code that sets forth a process for the mutual selection of arbitrators. The Code simply does not require the participation of each party prior to the valid appointment of an arbitration panel.

In fact, Rule 13404(d) does the opposite. It requires the Director to appoint arbitrators without a party's input if the Director does not receive that party's preferences by the

9

deadline. Rule 13404(d) could require the Director to contact the party before proceeding, or it could allow the party an opportunity to rebut any presumption that it did not wish to participate in the selection of the arbitrators. Instead, it simply instructs the Director to act as if the party did not intend to submit ranked lists and to proceed with the appointment of arbitrators. That is exactly what FINRA did here.

This case, then, does not involve the question of whether FINRA failed to follow the rules for appointing an arbitrator. FINRA did. Instead, this is a question of whether FINRA properly applied those rules. UBSFS seems to believe that the Director erred in not finding good cause to extend the deadline for UBSFS to submit its preferences under Rule 13207 and in not "exercis[ing] discretionary authority" to ensure that UBSFS had a say in the composition of the arbitration panel under Rule 13412. These questions, though, are procedural questions and "are for arbitral, rather than judicial, resolution." Dockser v. Schwartzberg, 433 F.3d 421, 425 (4th Cir. 2006).

While courts decide some questions of arbitrability, the Supreme Court has directed that "'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." Howsam, 537 U.S. at 84 (quoting John Wiley, 376 U.S. at 557). Thus, whether arbitration rules time-bar a claim is for

10

the arbitral body to decide. Howsam, 537 U.S. at 85. Likewise, the arbitral body decides whether arbitration rules require a panel of one or three arbitrators. Dockser, 433 F.3d at 425.

Here, whether good cause existed to extend the deadline was for FINRA to decide. UBSFS argues that it did not receive the lists of arbitrators. Padussis responds that the mailing was never returned to FINRA as undeliverable and that the whole problem was due to UBSFS's negligence – that UBSFS should have expected the lists shortly after Padussis filed his Answer and Counterclaim but that the matter fell between the cracks at UBSFS due to the transfer of the case to different counsel. This back and forth is rather beside the point. As with other procedural questions, the parties would have expected FINRA to decide this issue because the rules "provide specific non-judicial procedures for its resolution." Id. at 426. FINRA rules expressly give the Director the power to "exercise discretionary authority and make any decision that is consistent with the purposes of the Code to facilitate the appointment of arbitrators." FINRA Rule 13412. UBSFS cannot complain that the Director – rather than the appointed arbitrators – resolved the issue because the parties expressly granted this authority to the Director. Dockser, 433 F.3d at 428.

Moreover, this claim concerns "the written rules governing the parties' arbitration proceeding," Id. at 427, and the

11

arbitral body is "comparatively more expert" in applying those rules than courts. Howsam, 537 U.S. at 85. This is especially true here, where the Director can better determine whether an extension of a deadline will help reach a more just outcome or simply deprive the parties of a timely resolution.

We will not second-guess FINRA's decision that there was not good cause to extend the deadline. The parties agreed to arbitrate their disputes according to rules that clearly gave the Director the authority to make that decision. To usurp the Director's authority would be to open courts to legions of questions about whether arbitral bodies properly applied one rule or another. This would deprive parties of the very benefits they sought by agreeing to arbitration – relatively prompt and inexpensive dispute resolution.[1]

IV.

UBSFS next asks this court to impose an offset on the arbitration award. As discussed above, the arbitration panel here found that (1) Padussis owed UBSFS $1.68 million on the promissory note (which Padussis contends he would be unable to pay) and that (2) UBSFS was liable to Padussis for $932,000

---

[1] UBSFS also contends that we should vacate the award on the common law ground that the award "fails to draw its essence from the contract." Patten, 441 F.3d at 234. UBSFS relies on its argument that FINRA disregarded the agreed-upon method of selecting arbitrators. As discussed above, FINRA followed those rules. We thus find UBSFS's common law claim meritless.

based on his various employment claims. Offsetting the damages granted to Padussis from the $1.68 million would result in a net award to UBSFS of about $750,000, entirely cancelling out Padussis's award and freeing UBSFS of the need to cut a check. This court has previously recognized that "an offset of arbitration awards might constitute a modification of the award in some circumstances." Nat'l Risk Underwriters, Inc. v. Occidental Fire & Cas. Co. of N.C., 931 F.2d 1015, 1017 (4th Cir. 1991). While such circumstances did not exist in that case, they do exist here. This arbitration award expressly denied "[a]ny and all relief not specifically addressed" by the award, and the award did not mention an offset. J.A. 24. Thus, applying an offset to this award would be a modification of the award.

Under the Federal Arbitration Act, a court can modify an award only under specific, narrow circumstances. Relevant here, a court may modify an award "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Any order to modify an award must "effect the intent thereof and promote justice between the parties." Id.

Assuming arguendo that imposing an offset would be a "matter of form not affecting the merits of the controversy," an offset here would not effectuate the intent of the arbitrators, and we thus decline to impose one. The award itself is silent on the question of an offset, and there is no evidence in the

13

record that would enable us to say that the arbitrators intended for the award to include one.

UBSFS contends that an offset "would not change the arbitrators' valuation decision" but would provide a "simple, fair" result, which must have been the intent of the arbitrators. Appellant's Reply Br. at 25-26. An offset, though, changes the practical effect of the award. In a similar situation, a FINRA arbitration panel heard arguments for and against an offset and declined to provide one. UBS Fin. Servs., Inc. v. Mann, No. 14-10621, 2014 WL 1746249, at *3 (E.D. Mich. Apr. 30, 2014). We cannot know what the arbitration panel in this case would have ruled if UBSFS had asked it to provide an offset. That decision, though, was for the arbitration panel, and UBSFS should have asked the panel to make it. For whatever reason, it did not do so, and the question is simply not one for the courts to answer.

UBSFS also argues that regardless of the arbitrators' actual intent, we should recognize a presumption favoring an offset. However, imposing such a presumption would place a judicial gloss on the arbitration award. Such a gloss is inappropriate here, where the award expressly limits itself to the relief specifically addressed and was rendered pursuant to a detailed set of rules. As the Seventh Circuit has noted, the "arbitrator's failure to mention offsets in his ruling means

14

that no offset was granted." <u>Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.</u>, 82 F.3d 185, 190 (7th Cir. 1996).[2]

V.

When all is said and done, UBSFS plainly agreed to a process and then declined to abide by the result of that process. It agreed to arbitration; the dispute was within the scope of that agreement; and the rules by which the arbitration would proceed were openly declared and followed. The arbitration here spanned eighteen hearing sessions over nine separate days. We can find no basis for overturning the arbitral decision. The district court's denial of UBSFS's motion to vacate the award is therefore

<u>AFFIRMED</u>.

---

[2] In fact, FINRA has since amended its rules to provide for a presumption of an offset, but that amendment is effective only for arbitration awards rendered after October 24, 2016. Press Release, FINRA, Regulatory Notice 16-36: SEC Approves Amendments to the Codes of Arbitration Procedure Regarding Award Offsets (Sept. 2016); <u>see also</u> Order Approving a Proposed Rule Change to Permit Award Offsets in Arbitration, Exchange Act Release No. 78557, 81 Fed. Reg. 54,901 (Aug. 11, 2016). For us to rewrite that amendment to make it effective for an arbitration award rendered in October 2014 would be to displace FINRA's authority over its own arbitral proceedings. We must therefore observe the rules in place at the time of the arbitration.